C.C., Individually, and as Guardian of A.C., a Minor Child, Plaintiff,

v.

ROADRUNNER TRUCKING, INC., David C., and Alonzo, Defendants.

Civ. No. 91–C–1168B.

United States District Court, D. Utah, C.D.

May 25, 1993.

David K. Isom, Curtis R. Hussey, Salt Lake City, UT, Matthew G. Cooper, Murray, UT, for plaintiffs.

Scott W. Christensen, Salt Lake City, UT, for defendants.

## ORDER

BENSON, District Judge.

This matter was referred to Magistrate Judge Ronald N. Boyce pursuant to 28 U.S.C. § 636(b)(1)(B). On January 5, 1993, the Magistrate Judge heard oral argument on defendant Roadrunner Trucking, Inc.'s motion for summary judgment. On March 30, 1993, the Magistrate Judge issued a Report and Recommendation advising the court to grant defendant's motion. Plaintiffs have filed a timely objection to the Magistrate Judge's Report and Recommendation. Pursuant to the standard of review set forth in Rule 72(b) of the Federal Rules of Civil Procedure, the court has conducted a de novo review of defendant's motion.

After reviewing the parties' memoranda, Magistrate Judge Boyce's Report and Recommendation, and plaintiffs' objections to the Report and Recommendation, the court concludes that the Magistrate Judge's recommendation is proper. Magistrate Judge Boyce's treatment of the issues raised by the parties in their memoranda was thorough and accurate. He properly interpreted the laws involved in this case, and properly applied the laws to the facts of this case in reporting and recommending that the court grant defendant's motion for summary judgment. Accordingly, the court adopts Magistrate Judge Boyce's Report and Recommendation in its entirety, and overrules plaintiffs'

objection thereto. Defendant's Motion for Summary Judgment is hereby GRANTED.

## REPORT & RECOMMENDATION

BOYCE, United States Magistrate Judge.

Plaintiffs filed suit against Roadrunner Trucking, Inc. (Roadrunner), David C., and Alonzo. Defendants David C. and Alonzo have since been identified as David Rodriguez and Alonzo Cano. The case was referred to the magistrate judge under 28 U.S.C. § 636(b)(1)(B) and is presently before the court on defendant Roadrunner's motion for summary judgment. Jurisdiction is founded on diversity of citizenship under 28 U.S.C. § 1332.

## BACKGROUND

Defendant Roadrunner Trucking, Inc. is a motor common carrier of property authorized by the ICC to operate in interstate commerce. See 49 U.S.C. § 10922(b). Roadrunner does not have ICC authorization to carry passengers. See 49 U.S.C. § 10922(c). Defendants Rodriguez and Cano were Roadrunner truck drivers. At all relevant times, defendants Rodriguez and Cano were employees of Roadrunner and did not act as independent contractors. On the date of the incident in question, plaintiff A.C. was a fifteen-year-old minor. Plaintiff C.C. is A.C.'s mother.

In June 1991, A.C. and a friend were seeking rides at a truck stop in Payson, Utah. Defendants Rodriguez and Cano picked them up in their Roadrunner trucks and transported them to Cedar City, Utah. Plaintiff A.C. rode in the truck driven by defendant Rodriguez while her friend rode with defendant Cano. Plaintiff A.C. states that during the trip, defendant Rodriguez told her that he had a gun.

Plaintiff alleges that when they arrived at Cedar City, defendant Rodriguez forcibly raped her in the sleeping compartment of his Roadrunner truck. She further alleges that after the rape, he refused to allow her to go into a truck stop to use the rest room until she left her diamond ring as security that she would not call the police. Subsequently, defendants Rodriguez and Cano transported A.C. and her friend to Las Vegas where they left them at a truck stop.

Plaintiff A.C. seeks to impose vicarious liability on Roadrunner for the acts of defendants Rodriguez and Cano. In addition, plaintiff A.C. asserts claims against Roadrunner for negligent hiring, training, and supervision. Plaintiff C.C. seeks to recover for emotional distress suffered as a result of her daughter's rape.

## STANDARD FOR SUMMARY JUDGMENT

Summary judgment should be entered if the record shows that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c).

■■ A party moving for summary judgment bears the initial burden of informing the court of the basis of its motion. It may do so by identifying portions of the record that demonstrate that there is no genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). In response, the nonmoving party must "make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id.* at 322, 106 S.Ct. at 2552. If the nonmoving party fails to meet this burden, summary judgment is mandated. *Id.* In such a case, no genuine issue of material fact exists because a complete failure of proof of an essential element of the party's claim necessarily renders all other facts immaterial. *Id.* at 322–23, 106 S.Ct. at 2552–53.

## VICARIOUS LIABILITY

*Liability Under the Federal Regulatory Scheme*

In its motion for summary judgment, Roadrunner argues that it is not subject to vicarious liability, as a matter of state law, because the acts of defendants Rodriguez and Cano were outside the scope of their employment. However, plaintiffs respond that Roadrunner's vicarious liability is governed by

federal, rather than state, law. Plaintiffs further contend that under federal law, Roadrunner is strictly liable because the alleged rape occurred in a truck carrying Roadrunner's logo and ICC certification.[1]

In support of this contention, plaintiffs point out that motor carriers licensed by the ICC are required to provide "safe and adequate service." 49 U.S.C. § 11101(a). Congress has authorized the ICC to require regulated motor carriers using leased equipment to be responsible for the operation of the equipment as if the motor vehicles were owned by the carrier. 49 U.S.C. § 11107.[2] Plaintiffs rely on cases interpreting the federal regulations governing the leasing of motor vehicles by interstate motor carriers to support their assertion that Roadrunner is subject to strict liability for the acts of its drivers.

The regulations require that there be a written lease governing leasing arrangements. 49 C.F.R. § 1057.11(a) (1992).[3] The required lease must provide that the authorized carrier-lessee shall assume complete responsibility for the operation of the leased vehicle. 49 C.F.R. § 1057.12(c).[4]

In construing this provision, some courts have imposed vicarious liability on the lessee for accidents involving leased vehicles even though there would have been no liability under traditional doctrines of master-servant

relationships and respondeat superior. For example, courts have imposed liability on the lessee for a driver's negligence even though the leased truck was driven by the lessor-owner rather than an employee of the lessee. *See, e.g. Rodriguez v. Ager,* 705 F.2d 1229 (10th Cir.1983). Similarly, lessees have been held liable for a driver's negligence even when he was not engaged in the business of the lessee. *Id.*

The ICC regulations also provide that the lessee shall identify the equipment operated under its authority by displaying its name and "MC" number on the sides of the leased vehicle. 49 C.F.R. §§ 1057.11(c), 1058.2. Courts have held that a licensed motor carrier cannot eliminate its responsibility for the operation of leased equipment unless it removes the identifying devices before relinquishing the equipment to the lessor. *Mellon Nat'l Bank & Trust Co. v. Sophie Lines, Inc.,* 289 F.2d 473, 476 (3d Cir.1961).

Plaintiffs seek to extend this body of case law to the instant case in which Roadrunner employees were driving company-owned trucks. Plaintiffs contend that because Roadrunner is a common carrier whose trucks were operating in interstate commerce with Roadrunner's ICC certification and carrying Roadrunner's logo, federal law imposes strict liability upon Roadrunner for the torts of its drivers. Plaintiffs further

---

1. Plaintiffs' complaint invokes jurisdiction under 28 U.S.C. § 1332, diversity of citizenship. Since plaintiffs failed to allege federal question jurisdiction in their complaint, their raising this argument in opposition to summary judgment is questionable.

2. The pertinent part of the statute provides as follows:

   [T]he Interstate Commerce Commission may require a motor carrier providing transportation subject to the jurisdiction of the Commission under subchapter II of chapter 105 of this title that uses motor vehicles not owned by it to transport property under an arrangement with another party to—

   . . . .

   (4) have control of and be responsible for operating those motor vehicles in compliance with requirements prescribed by the Secretary of Transportation on safety of operations and equipment, and with other applicable law as if the motor vehicles were owned by the motor carrier.
   49 U.S.C. § 11107(a).

3. The pertinent part of the regulation is as follows:

   [T]he authorized carrier may perform authorized transportation in equipment it does not own only under the following conditions:
   (a) *Lease*—There shall be a written lease granting the use of the equipment and meeting the requirements contained in § 1057.12.
   49 C.F.R. § 1057.11(a) (1992).

4. The regulation provides as follows:

   The lease shall provide that the authorized carrier lessee shall have exclusive possession, control, and use of the equipment for the duration of the lease. The lease shall further provide that the authorized carrier lessee shall assume complete responsibility for the operation of the equipment for the duration of the lease.
   49 C.F.R. § 1057.12(c).

contend that state law is inapplicable and that Roadrunner is liable even if the drivers' conduct was outside the scope of their employment.

■ A brief overview of the history of the relevant federal statutes and regulations reveals that the purpose of the regulatory scheme governing truck leasing was to protect the public from irresponsible leasing arrangements. Prior to amendment of the Interstate Commerce Act, there were widespread violations and evasions of regulatory authority by carriers leasing or borrowing equipment not subject to the Act. *Transamerican Freight Lines, Inc. v. Brada Miller Freight Sys., Inc.*, 423 U.S. 28, 36–37, 96 S.Ct. 229, 233–34, 46 L.Ed.2d 169 (1975); *American Trucking Ass'ns v. United States*, 344 U.S. 298, 304–05, 73 S.Ct. 307, 311–12, 97 L.Ed. 337 (1953); *Empire Fire & Marine Ins. v. Guaranty Nat'l Ins.*, 868 F.2d 357, 362 (10th Cir.1989); H.R.Rep. No. 2425, 84th Cong., 2d Sess. (1956), *reprinted in* 1956 U.S.C.C.A.N. 4304, 4306 [hereinafter *H.R.Rep.*]. Among other things, authorized carriers used vehicles owned by others to avoid safety requirements imposed by the Act. Further, the practice of using borrowed or leased vehicles made it difficult to fix carrier responsibility for accidents. *Brada Miller Freight Sys., Inc.*, 423 U.S. at 37, 96 S.Ct. at 233; *American Trucking Ass'ns v. United States*, 344 U.S. at 304–05, 73 S.Ct. at 311–12; *Empire Fire & Marine Ins. v. Guaranty Nat'l Ins.*, 868 F.2d at 362; H.R.Rep., *supra*, at 4307. In order to protect the public from these abuses, Congress amended the Interstate Commerce Act to allow the ICC to promulgate regulations to insure that authorized carriers would be responsible for the operation of leased vehicles. *Empire Fire & Marine Ins. v. Guaranty Nat'l Ins.*, 868 F.2d at 362; H.R.Rep., *supra*, at 4305.

Consistent with the purpose of the regulations, the Tenth Circuit has imposed liability upon a lessee for an accident that occurred during the term of the lease while the equipment was carrying the lessee's insignia and identifying docket number, even though the driver was not acting on behalf of the lessee. *Rodriguez v. Ager*, 705 F.2d 1229 (10th Cir.

1983). The court noted that the purpose of this approach is to eliminate fly-by-night contracting by requiring a lessee, who allows a leased vehicle to be used under its ICC operating authority, to be responsible for the accidents of its driver. *Rodriguez*, 705 F.2d at 1236.

Other courts have taken a similar approach, holding that under federal regulations, a lessee's liability is not governed by the traditional common law doctrines of master-servant relationships and respondeat superior. *See, e.g., Johnson v. S.O.S. Transport, Inc.*, 926 F.2d 516 (6th Cir.1991) (holding that lessee could be liable under the federal statutory scheme for defective equipment on leased truck which resulted in the death of the non-employee driver, even though the lessee had no liability at common law); *Planet Ins. Co. v. Transport Indem. Co.*, 823 F.2d 285 (9th Cir.1987) (relying on federal law to impose liability on insurer of lessee of truck driven by owner-operator which collided with automobile killing its driver); *Price v. Westmoreland*, 727 F.2d 494 (5th Cir.1984) (imposing liability on lessee for injury to unauthorized passenger due to accident caused by negligent operation of leased truck by owner-operator); *Wellman v. Liberty Mut. Ins. Co.*, 496 F.2d 131, 139 (8th Cir.1974) (stating that ICC regulations require that a motor carrier operating leased equipment be held liable to the public for the negligent operation of the equipment); *Proctor v. Colonial Refrigerated Transp., Inc.*, 494 F.2d 89 (4th Cir.1974) (injury to employee of lessor who was a passenger in the truck); *Mellon Nat'l Bank & Trust Co. v. Sophie Lines, Inc.*, 289 F.2d 473 (3d Cir.1961) (lessee was responsible for operation of leased truck involved in collision even though truck was not engaged in hauling for lessee and lessee had no knowledge of the trip).

■ The majority view thus holds the lessee responsible for accidents involving leased trucks operating under the lessee's ICC authorization. The rationale behind this view is that in order to obtain ICC authorization, a carrier must demonstrate financial ability, insurance coverage, and compliance with safety requirements, both as to equipment and competence of drivers. When a carrier,

by lease, allows a truck to use its ICC authorization, it permits an otherwise unregulated truck and driver to be on the road in interstate commerce. For this reason, the lessee is held responsible for accidents caused by the driver's negligence. *See Rediehs Express, Inc. v. Maple*, 491 N.E.2d 1006, 1012 (Ind.App.1986), *cert. denied*, 480 U.S. 932, 107 S.Ct. 1571, 94 L.Ed.2d 762 (1987). *See Mellon Nat'l Bank & Trust Co.*, 289 F.2d at 476 (stating that "[w]ithout the lease, at the moment of the accident the truck had not even a semblance of excuse to be on the road"). *See also American Trucking Ass'ns*, 344 U.S. at 302, 73 S.Ct. at 310 (stating that ICC authorization is a precondition to interstate service which is granted only upon a showing of fitness, ability to perform, and public need for the service).

One court has explained the reasons for placing the responsibility on the lessee as follows:

> Absent such a policy, when innocent people are hurt or killed, there will be, as here, a round robin of finger pointing by carriers, lessors, owners and drivers, cargo owners, and insurers raising issues of independent contractor, frolic and detour, whose cargo was being carried, what instructions the driver had, agency and the like in their attempt to evade responsibility for the carnage wrecked [sic] upon innocent motorists. The plaintiff encounters much difficulty in fixing responsibility, for only the carrier and his lessor really know their arrangements. A plaintiff should not be required to bear this burden nor should he be required to settle for a financially irresponsible defendant fathered by the carrier.
>
> ... The carrier must, at his peril, exert care in his leasing arrangements and avoid leasing from "gypsies" or fly-by-night, irresponsible truckers. The regulations and cases make the carrier police its lessors as it is policed by the ICC.

*Rediehs Express, Inc.*, 491 N.E.2d at 1012.

Plaintiffs have cited numerous cases in which courts have imposed vicarious liability upon ICC-regulated motor carriers for accidents involving equipment leased to them. However, in every case, the injury in question resulted from an accident involving a leased truck. Plaintiffs have pointed to no case in which a court has imposed vicarious liability upon a lessee for the intentional tort of the driver of a leased vehicle. Likewise, none of the cases cited by plaintiffs imposes liability upon a carrier for the intentional tort of an employee driving a carrier-owned vehicle and acting outside the scope of his employment, which is the circumstance in this case.

Moreover, the policy reasons supporting a strict interpretation of the ICC leasing regulations are nonexistent when the truck is owned by an ICC-regulated company and driven by its employee. Because the company is regulated by the ICC, it must comply with ICC safety regulations. Further, where there is no leasing arrangement, problems in determining who is responsible for the operation of the truck do not arise. Finally, since the company must meet financial and insurance requirements in order to obtain authorization, members of the public who might be injured in trucking accidents are protected.

■ A further reason for applying a different standard in nonleasing situations is that a federal remedy is unnecessary. Where the carrier's truck is driven by the carrier's employee, state law in all jurisdictions provides a remedy under the doctrine of respondeat superior. Under a lessee-lessor relationship, that remedy is not available. Since neither the case law nor the policy reasons behind the leasing regulations supports plaintiffs' argument that federal law subjects authorized motor carriers to strict liability for the intentional torts of their drivers, plaintiffs cannot succeed under this theory.

*Respondeat Superior*

■ In diversity cases, a federal court should ascertain and apply the substantive law of the state with the objective of obtaining the same result that would be reached by a state court. *Romero v. International Harvester Co.*, 979 F.2d 1444, 1448 (10th Cir. 1992); *Tucker v. R.A. Hanson Co., Inc.*, 956 F.2d 215, 217 (10th Cir.1992); *Budd v. Amer-*

*ican Excess Ins. Co.*, 928 F.2d 344, 346 (10th Cir.1991).

Under the doctrine of respondeat superior, employers may be held vicariously liable for the torts of their employees committed within the scope of their employment. *Hodges v. Gibson Prods. Co.*, 811 P.2d 151, 156 (Utah 1991); *Clover v. Snowbird Ski Resort*, 808 P.2d 1037, 1040 (Utah 1991); *Christensen v. Burns Int'l Sec. Serv.*, 844 P.2d 992, 994 (Utah App.1992). The Utah Supreme Court has held that there are three elements for determining whether an employee is acting within the scope of his employment for the purpose of respondeat superior liability. First, the conduct of the employee must be of the general kind and nature that he was hired to perform. Second, the conduct must occur during the employee's work hours and within the usual spatial boundaries of his employment. Third, the employee's conduct must be motivated, at least in part, by the purpose of serving his employer's interest. *J.H. by D.H. v. West Valley City*, 840 P.2d 115, 122 (Utah 1992); *Clover*, 808 P.2d at 1040; *Birkner v. Salt Lake County*, 771 P.2d 1053, 1056–57 (Utah 1989). There can be no vicarious liability when an employee acts entirely upon personal motives unrelated to his employer's interests. *Hodges*, 811 P.2d at 157.

As a general rule, the question whether an employee acted within the scope of employment is a question of fact. However, where the employee's conduct is so clearly within or without the scope of employment that reasonable minds could not differ, the court may decide the question as a matter of law. *J.H. by D.H.*, 840 P.2d at 122–23; *Clover*, 808 P.2d at 1040; *Birkner*, 771 P.2d at 1057.

Defendant Rodriguez's misconduct with A.C. was clearly outside the scope of his employment. First, sexual activity with a hitchhiker was not of the general kind and nature of activity that defendant Rodriguez was hired to perform. *See J.H. by D.H.*, 840 P.2d at 123 (stating that a policeman obviously was not hired to perform acts of a sexual nature on explorer scouts under his supervision); *Birkner*, 771 P.2d at 1058 (stating that sexual misconduct with a client is not the general kind of activity a therapist is hired to perform). Moreover, both Roadrunner's driver's manual and federal regulations prohibit the transportation of passengers without written authorization.[5] *See* 49 C.F.R. § 392.60. In addition, Roadrunner conducts extensive training of new drivers during which employees are fully advised that company policy prohibits unauthorized transportation of passengers. (Interrog. no. 13, Def.'s Ans. Pls.' 1st Set Interrogs., attached as ex. 5 to Roadrunner's Reply Br., file entry 96.)

Second, although the alleged rape occurred in the sleeper of defendant Rodriguez's truck and thus, was arguably within the spatial boundaries of his employment, defendant's driver's log indicates that defendant Rodriguez was off-duty during the time the rape is alleged to have occurred. (Driver's Daily Log attached to Varela aff.)[6] Plaintiffs assert that the log conflicts with plaintiff A.C.'s deposition testimony concerning the actual time spent at Cedar City. However, it is unnecessary to determine whether the alleged rape occurred during defendant Rodriguez's work hours because the other two elements required for a finding that defendant Rodriguez was acting within the scope of his employment are not satisfied.

Regarding the third element, no evidence exists to support a conclusion that defendant Rodriguez's conduct with A.C was intended to further the interests of Roadrunner. Roadrunner did not benefit from the acts; rather, defendant Rodriguez acted for his person-

---

5. In their opposition to summary judgment, plaintiffs stated that some of the materials upon which Roadrunner relied to support its motion for summary judgment were not properly authenticated. Subsequently, pursuant to an order by the court, Roadrunner submitted authenticated documents. (See file entry 107.) Although the driver's manual containing Roadrunner's passenger policy was not included in this submis-sion, the parties discussed the driver's manual at oral argument and it was uncontested that the manual contains such a policy.

6. This affidavit is attached to Roadrunner's Certificate of Compliance and Submission of Authenticated Documents. (File entry 107.)

al gratification. *See J.H. by D.H.*, 840 P.2d at 123 (stating that no evidence existed to lead reasonable minds to conclude that policeman who molested explorer scout was acting in the interest of his employer); *Birkner*, 771 P.2d at 1058 (stating that therapist's sexual misconduct with client was not intended to benefit employer). Reasonable minds could not differ in concluding that defendant Rodriguez's actions with A.C. were outside the scope of his employment. Accordingly, defendant Roadrunner cannot be held liable on a theory of respondeat superior.

*Liability of Common Carrier Under Utah Law*

■ Plaintiffs also argue that because Roadrunner is a common carrier, it is subject to strict liability under Utah law. In support of this argument, plaintiffs state that although no Utah case addresses the issue, other state courts have consistently held common carriers of passengers strictly accountable for the rape of passengers by their employees.[7]

Some courts have held common carriers of passengers accountable for sexual assaults by their employees even though the employees were acting outside the scope of their employment. *See e.g., St. Michelle v. Catania*, 252 Md. 647, 250 A.2d 874 (App.1969) (rape of passenger by cabdriver and his companion). The rationale for imposing liability has been explained as follows:

> Even where the servant's ends are entirely personal, the master may be under such a duty to the plaintiff that responsibility for the servant's acts may not be delegated to him. This is true in particular in those cases where the master, by contract or otherwise, has entered into some relation requiring him to be responsible for the protection of the plaintiff.

W. Page Keeton et al., *Prosser and Keeton on the Law of Torts*, § 70, at 506 (5th ed. 1984) (footnotes omitted). Another commentator notes that several rationales have been advanced for imposing liability on carriers for acts outside the scope of employment. For example, some courts have suggested

that carriers have a nondelegable duty to carry passengers safely to their destinations; while other courts have held that freedom from harm is an implied term of the contract of carriage. See Gail M. Ballou, *Recourse for Rape Victims: Third Party Liability*, 4 Harv.Women's L.J. 105, 127 (1981).

Plaintiffs cite several cases holding carriers liable for assaults by their employees. However, in each of these cases, the carrier in question was a carrier of passengers, rather than a carrier of property, as in the instant case. Similarly, each victim was a fare-paying passenger in a conveyance generally used for carrying passengers. *See Berger v. Southern Pac. Co.*, 144 Cal.App.2d 1, 300 P.2d 170 (1956) (sexual assault of train passenger by porter); *Korner v. Cosgrove*, 141 N.E. 267 (Ohio 1923) (rape of passenger by cabdriver); *Garvick v. Burlington, C.R. & N. Ry.*, 131 Iowa 415, 108 N.W. 327 (1906) (sexual assault of train passenger by brakeman). Thus, these cases are distinguishable from the instant case in that the carriers were in the business of accepting passengers for hire and a resulting contractual relationship existed between the parties.

In the instant case, Roadrunner is a carrier of property, not passengers. Moreover, there was no contract, either express or implied, between Roadrunner and plaintiff A.C. for her transportation. As discussed, federal regulations and Roadrunner's own policy prohibited the carrying of passengers on trucks without prior express written authorization. Roadrunner did not authorize plaintiff A.C. to ride as a passenger in its truck nor did it have knowledge that she was riding without authorization. Even if Utah courts were to impose liability upon a common carrier of passengers for assaults by its employees acting outside the scope of their employment, Roadrunner would not fall within the confines of that liability under the facts of this case. Accordingly, plaintiff A.C. cannot recover under this theory.

## NEGLIGENT EMPLOYMENT

■ Plaintiffs contend that respondeat superior liability notwithstanding, Roadrun-

---

7. The Utah Supreme Court has stated that an example of a special relationship is that between carriers and passengers. *Beach v. University of* *Utah*, 726 P.2d 413, 415–16 n. 2 (Utah 1986); *DCR Inc. v. Peak Alarm Co.*, 663 P.2d 433, 435 (Utah 1983).

ner is liable for its own negligence in hiring and supervising defendants Rodriguez and Cano. Even where the doctrine of respondeat superior is inapplicable, an employer may be held directly liable for its acts or omissions in hiring or supervising its employees. *J.H. by D.H.*, 840 P.2d at 124; *Clover*, 808 P.2d at 1048; *Birkner*, 771 P.2d at 1059. Because this is a diversity case, the court looks to state substantive law. *Budd*, 928 F.2d at 346.

▮ An essential element of any negligence claim is a duty of reasonable care owed by the defendant to the plaintiff. *See J.H. by D.H.*, 840 P.2d at 124, 126; *Williams v. Melby*, 699 P.2d 723, 726 (Utah 1985). Roadrunner contends that it owed no duty to unauthorized passengers and that therefore, plaintiffs cannot recover on a negligence theory. In support of this contention, Roadrunner states that no special relationship existed between itself and A.C.; and further, that it was not foreseeable that its drivers would sexually assault hitchhikers.

Plaintiffs respond that there was a special relationship between Roadrunner and A.C. because Roadrunner is a common carrier and A.C. was its passenger. This argument has already been rejected since A.C. was not a passenger in the sense contemplated by the case law. Regarding foreseeability, plaintiffs state that it is not an independent element of negligence, but is simply a part of the equation that defines duty.

*Foreseeability*

▮ Although foreseeability is only one factor that may give rise to a duty of care, it is clear that under Utah law, foreseeability is necessary to impose liability for negligent employment. The Utah Supreme Court has recently considered the tort of negligent employment stating that it encompasses negligent hiring, negligent supervision, and negligent retention. *Retherford v. AT & T Communications of the Mountain States, Inc.*, 844 P.2d 949, 973 n. 15 (Utah 1992). The court stated that because its previous cases did not describe the elements of negligent employment in detail, it had turned to other jurisdictions for guidance. The court concluded that in order to prevail on a claim of negligent employment, a plaintiff must show

that (1) the employer knew or should have known that its employees posed a foreseeable risk of harm to third parties; (2) the employees inflicted such harm; and (3) the employer's negligent hiring, supervision, or retention of the employees proximately caused the injury. *Id.* at 973.

In its earlier negligent employment cases, the court likewise imposed a foreseeability requirement. In *J.H. by D.H. v. West Valley City*, the court stated that in order to show that a duty existed to supervise employees so as to protect persons from sexual molestation, the plaintiff was required to show that such acts were foreseeable. The court explained that there is "no duty to protect persons from unforeseeable risks of harm at the hands of another." *J.H. by D.H.*, 840 P.2d at 126.

In that case, the Utah Supreme Court affirmed a grant of summary judgment in favor of defendant West Valley on the plaintiff's claim of negligent supervision of a police officer who sexually molested him. At the time of the incident, the plaintiff was an explorer scout in a Law Enforcement Explorer Scout Program sponsored by the West Valley City Police Department. The defendant police officer acted as advisor to the program.

The court held that the plaintiff had failed to show that violent or deviant conduct toward the explorers by West Valley's police officers was foreseeable. In so holding, the court stated that West Valley had no notice of problems with any of its officers and had no reason to know that it was necessary to take special precautions in supervising the offending officer. Prior to the incident, the officer had served on the Salt Lake City and West Valley police forces with an unblemished record. The court noted that there had been no prior problems of a sexual nature between West Valley officers and the explorers. Thus, West Valley had no reason to know that this type of problem existed in its program. Without this knowledge, West Valley had no duty to take special supervisory measures. *J.H. by D.H.*, 840 P.2d at 126. *See also Stone v. Hurst Lumber Co.*, 15 Utah 2d 49, 386 P.2d 910 (1963) (question of negli-

gent hiring or retention should not have been submitted to jury where there was a lack of evidence that employer knew or should have known of violent propensities of employee who committed an assault and battery). *Cf. Clover v. Snowbird Ski Resort,* 808 P.2d at 1048 (summary judgment inappropriate on claim of negligent supervision of employee whose reckless skiing injured plaintiff where evidence showed that employer furnished employees with ski passes, had knowledge of dangerous condition created by ski jump, and was aware that employees often took the jump, but did nothing to alleviate the danger).

■ In the instant case, plaintiffs have produced no evidence to show that Roadrunner knew or had reason to know that defendant Rodriguez posed a risk of sexual assault to third parties. Plaintiffs assert that it is common and foreseeable that truck drivers pick up hitchhikers and solicit sexual relations with them. Plaintiffs argue that under these circumstances, it was foreseeable that a teenage passenger like A.C. would be sexually assaulted by drivers. However, plaintiffs have not shown that Roadrunner knew, or should have known, that a problem of this nature existed with its drivers.

David Varela, Roadrunner's risk manager, testified in his deposition that he was not aware of any prior claims of rape involving Roadrunner truckers. (Varela dep. at 20, attached as ex. 2 to Roadrunner's Reply Br.) Further, there is no evidence that Roadrunner had reason to know that defendant Rodriguez had deviant characteristics that might lead him to commit a sexual assault. Since plaintiffs have failed to show that there was a foreseeable risk that Roadrunner's drivers might sexually assault third parties, they have failed to show that Roadrunner owed a duty of care to plaintiff A.C. However, even if plaintiffs could establish a duty of care on Roadrunner's part, they have not demonstrated a breach of that duty or proximate causation as discussed below.

*Negligent Hiring*

■ Plaintiffs state that Roadrunner's pre-employment screening was superficial and inadequate. Federal regulations require that trucking companies must follow certain procedures in hiring drivers. After reviewing Roadrunner's employment files concerning the defendant drivers, Glen Burgess, plaintiffs' expert, testified in his deposition that Roadrunner's hiring practice complied with federal regulations. (Burgess dep. at 58, 60–62, copy attached as ex. 8 to Roadrunner's Reply Br.) In addition, plaintiffs' expert testified that there was nothing in defendants Rodriguez's or Cano's employment records that should have put Roadrunner on notice that defendants had picked up unauthorized passengers in the past or that they were likely candidates for committing rape. (Burgess dep. at 97–98.)

Plaintiffs claim that Roadrunner overlooked certain red flags or warning signs such as the fact that defendant Rodriguez had held seven jobs in a period of less than a year and a half. Although this fact indicates that Rodriguez probably would not stay on a particular job for very long, it is not evidence of a tendency to commit rape or to engage in deviant sexual activity or that he had a proclivity towards it.

Plaintiffs also argue that Roadrunner should have conducted a criminal background check on Rodriguez, rather than relying upon his representations that he had no criminal history. However, plaintiffs' expert testified that it is very costly to obtain information about a driving applicant's criminal record. (Burgess dep. at 29, 108–09.) Further, it is not the general practice in the trucking industry to perform criminal record checks when hiring drivers. (Burgess dep. at 109.) Moreover, there is no evidence that defendant Rodriguez had a criminal record; in particular, there is no evidence of any criminal record involving aberrant sexual conduct.

Plaintiffs suggest that a criminal record check performed by Officer Houchen, a Cedar City detective, was inadequate and that it also should have included a check of Mexican criminal records. (See Pls.' Mem.Opp'n Summ.J. at 16, file entry 90.) However, plaintiffs have submitted no evidence to show that the defendant drivers had criminal records in either the United States or Mexico. Further, it would be an unrealistic burden to require trucking companies to perform crimi-

nal background checks on potential drivers, particularly in foreign countries. It is doubtful that Mexican records would be available to a trucking company. The suggestion that Roadrunner should have searched Mexican criminal records borders on the frivolous and is not made in good faith.

As one court stated, a requirement that trucking companies must check a prospective driver's criminal background would mean that an employer would have to seek out and evaluate official police and perhaps court records from every jurisdiction with which a job applicant had any significant contact. The court had serious doubts whether this could be achieved effectively.[8] *Connes v. Molalla Transport System, Inc.*, 831 P.2d 1316 (Colo. 1992) (holding, in suit by motel clerk who was raped by truck driver, that trucking company had no duty to conduct a prehiring investigation of driver's non-vehicular criminal background). *See also F & T Co. v. Woods*, 92 N.M. 697, 594 P.2d 745 (1979) (rape of former customer by deliveryman was not foreseeable even though employer had knowledge of prior criminal record). *But cf. Malorney v. B & L Motor Freight, Inc.*, 146 Ill.App.3d 265, 100 Ill.Dec. 21, 496 N.E.2d 1086 (1986) (in case where truck driver with record of violent sexual assaults raped teenage hitchhiker, it was a question of fact for the jury whether employer negligently hired driver by not checking his non-vehicular criminal background).[9]

■ Moreover, Utah law would not require such a search. In a recent case, the Utah Supreme Court held that the Department of Social Services (DSS) did not have a duty to conduct a criminal background check as part of the licensing procedure for daycare providers. *C.T. v. Martinez*, 845 P.2d 246 (Utah 1992). In *C.T.*, a child was sexually abused and assaulted by the husband of a licensed caregiver. The plaintiff sued, alleging that DSS was negligent in failing to investigate the husband's criminal history. A criminal background check presumably would have revealed that the husband had previously been convicted of sexual crimes against children. Nevertheless, the court refused to impose such a duty, stating that it would force DSS to use its limited resources for criminal background checks when the resources could be allocated in other ways to better serve day-care patrons. *C.T.*, 845 P.2d at 249. *See also J.H. by D.H.* 840 P.2d at 123–25 (holding that city was not negligent in failing to conduct a more extensive background check or to conduct psychological testing before hiring police officer).

Plaintiffs have not shown a connection between Roadrunner's hiring practices and the alleged sexual assault of plaintiff A.C. Accordingly, plaintiffs cannot succeed on this claim.

*Negligent Supervision and Training*

■ As previously discussed, both Roadrunner's driver's manual and federal regulations prohibit the carrying of unauthorized passengers. See 49 C.F.R. § 392.60. Defendant Rodriguez signed documents acknowledging that he received copies of the Roadrunner's Employee Manual for Driving Personnel, the Drivers' Manual for Roadrunner Trucking, Inc., and the Federal Motor Carri-

---

8. Utah law restricts public access to criminal records. See Utah Code Ann. § 77–26–16 (Supp. 1992). Other jurisdictions impose such restrictions as well. For a discussion of these statutory restrictions and cases interpreting them, see Kristine Cordier Karnezis, Annotation, *Validity, Construction, and Application of Statutory Provisions Relating to Public Access to Police Records*, 82 A.L.R.3d 19 (1978)

9. The *Malorney* court found as a matter of law that the trucking company had a duty to check the driver's background to determine whether he was a fit employee. The court stated that under the circumstances, reasonable minds could differ as to whether the company used due care in the performance of this duty when it hired the driver. The driver had a history of convictions for violent sex-related crimes and, the year before being hired by the defendant, had been arrested for aggravated sodomy upon two teenage hitchhikers while driving a truck for another employer. In the instant case, there is no evidence that defendant Rodriguez had a criminal history involving sex-related crimes. The *Malorney* case is further distinguishable because the court stated that there was no evidence in the record to justify a contention that it would be too costly to check the criminal history of potential drivers. In this case, plaintiffs' expert testified that such a check would be very costly. Furthermore, the defendant in *Malorney* arguably could have discovered the driver's criminal background by checking with his previous employer.

er Safety Regulations Pocketbook. (Copies of the acknowledgements are attached to Varela aff., file entry 107.) Further, Roadrunner states that it conducts extensive training and orientation of its new drivers during which they are fully advised of the company's policies prohibiting unauthorized passengers. (Def.'s Ans. Pl.'s 1st Set Interrogs., No. 13.) Finally, Roadrunner has submitted a form, dated June 5, 1991, authorizing defendant Rodriguez to transport a passenger in his truck. (Attached to Varela aff., file entry 107.) The form, signed by .both defendant Rodriguez and his passenger, demonstrates that Rodriguez was familiar with the requirement that a driver must obtain written authorization before carrying a passenger in his truck. The evidence establishes that Roadrunner instructed its employees that they should not transport unauthorized passengers. Accordingly, plaintiffs have not shown that Roadrunner's training was inadequate.

■ With regard to supervision of its employees, Roadrunner employed road supervisors to see that its drivers observed company policy while on the road. Plaintiffs allege that at the time of the incident in question, Roadrunner had reduced the number of on-the-road supervisors who could have enforced the prohibition against unauthorized passengers. This allegation is based upon the deposition testimony of Leonard Yoder, Roadrunner's director of public safety, that at one time he had as many as fourteen supervisors on the road. (See Yoder dep. at 22, attached as ex. 5 to Pls.' Mem.Opp'n Summ.J., file entry 90.) However, Roadrunner responds that the reduction in the number of supervisors did not occur until after the incident in question. Mr. Yoder states that at the time of the incident, Roadrunner employed fourteen road safety supervisors to see that its drivers complied with company policy while on the road. (Yoder aff., ex. 9 to Roadrunner's Reply Br, file entry 96.)

■ A consideration in determining whether to impose a duty on a party to protect another from the acts of a third party is whether the duty is realistically incapable of performance. *Beach v. University of Utah*, 726 P.2d 413, 418 (Utah 1986). In regard to the claim of negligent supervision, it obviously would be unrealistic to require a trucking company to supervise its employees on a continuous basis while they are on the road. Plaintiffs' expert admitted this during his deposition.

Q. During the course of the deposition I think you have rendered testimony a number of times that the truck drivers, once they leave the terminal, are essentially unsupervised and can do whatever they want on the road. Is that correct?

A. Virtually correct.

Q. And that's something that is industry-wide?

A. That's correct.

Q. And that part of the problem with that is that the economic reality is you can't supervise them if they are scattered out all over the United States?

A. Correct.

Q. So those decisions that you have to make as to what you can do with those drivers are based on, among other things, the economic realities of the trucking industry?

A. Absolutely.

Q. And, quite frankly, any trucking company is faced with the problem that they can't monitor the driver's conduct out in the field and stay in business?

A. Basically true.

(Burgess dep. 107–08.)

■ Plaintiffs also suggest that Roadrunner should have placed notices of warning to unauthorized passengers on its trucks as a measure to discourage the carrying of such passengers. However, it is clear from A.C.'s deposition that she was aware that the drivers were not supposed to carry passengers in the trucks.

Q. Okay. What happened when you stopped?

A. I was sitting in the back, because he told us that when we got to truck stops we had to sit in the back so nobody saw us.

Q. Did he explain that to you any more?

A. He's not allowed to have people in his truck.

Q. Did he tell you that before you girls ever got in to ride with him? Is that something that came up later?

A. He told us that before we went.

(A.C. dep. at 43.) Thus, the suggestion that warning signs might have prevented the incident at issue is speculative at best. *See J.H. by D.H.*, 840 P.2d at 126 (stating that the plaintiff's suggestion that other measures could have been taken to protect youths from molestation by police officers was unreasonable and speculative).

Plaintiffs have failed to show that defendant Rodriguez's acts were foreseeable. Further, they have not demonstrated that defendant Roadrunner's hiring, training, or supervision of Rodriguez were the proximate cause of A.C.'s injury. Accordingly, Roadrunner is entitled to summary judgment on plaintiff A.C.'s negligent employment claim.

## PLAINTIFF C.C.'S CLAIMS

### Negligent Infliction of Emotional Distress

Plaintiff C.C. seeks to recover for the emotional distress she has suffered as the result of the rape of her daughter A.C. Roadrunner contends that C.C. is not entitled to damages for negligent infliction of emotional distress because she was not within the "zone of danger" as required by Utah case law.

■ The Utah Supreme court has adopted the "zone of danger" theory of recovery for the tort of negligent infliction of emotional distress. *Hansen v. Sea Ray Boats, Inc.*, 830 P.2d 236, 239 (Utah 1992); *Johnson v. Rogers*, 763 P.2d 771, 778–85 (Utah 1988); *Boucher v. Dixie Medical Center*, 850 P.2d 1179 (Utah 1992). Under that theory, only persons placed in actual physical peril by the defendant's conduct may recover. *Hansen*, 830 P.2d at 239; *Johnson*, 763 P.2d at 781–82. Consequently, persons outside the zone of danger created by the defendant may not recover for emotional distress caused from witnessing the injury of others. *Hansen*, 830 P.2d at 239; *Johnson*, 763 P.2d

at 782. Thus, there can be no recovery "where the emotional distress arises solely because of harm or peril to a third person, and the negligence of the actor has not threatened the plaintiff with bodily harm in any other way." *Hansen*, 830 P.2d at 240 (quoting Restatement (Second) of Torts § 313 cmt. d (1965).

■ In the instant case, since plaintiff C.C. was not present during the incident which gave rise to plaintiff A.C.'s claims, she could not have been within the zone of danger. Consequently, plaintiff C.C. may not recover for negligent infliction of emotional distress.

■ In opposition to summary judgment, plaintiff C.C. argues that she has a statutory right to recover for the rape of her daughter. In support of this argument, plaintiff C.C. cites a Utah statute that gives parents the right to sue for the seduction of a minor child.[10] However, as Roadrunner points out, this statute applies to seduction which consists of different elements than rape. Further, this claim was not raised in the complaint and is not appropriately raised in opposition to a motion for summary judgment. Finally, the proper defendant in a suit to recover for seduction of a minor child is the seducer. Plaintiff cannot recover from Roadrunner for the alleged seduction.

Plaintiff C.C. also states that although she relies primarily on the above-mentioned statute to recover for the rape, she does not concede that she has no common law right of recovery for emotional distress. She argues that under *Hansen v. Sea Ray Boats, Inc.*, defendants' duty to her depends on whether it was foreseeable to defendant Rodriguez that A.C.'s mother would suffer emotional distress from the rape of A.C. However, this argument is clearly contrary to *Hansen* which holds that the plaintiff must be within the zone of danger in order to recover. See *Hansen v. Sea Ray Boats, Inc.*, 830 P.2d at 239–40 & n. 13. *See also Boucher v. Dixie*

---

10. The statute provides as follows:

A parent or guardian may prosecute as plaintiff an action for the seduction of a child who, at the time of seduction, is under the age of majority, though the child or the ward is not living with or in the service of the plaintiff at the time of the seduction or afterwards and there is no loss of service.

Utah Code Ann. § 78–11–5 (1992).

*Medical Center*, 850 P.2d 1179 (refusing to abandon the zone of danger rule and noting that allowing recovery to all those who suffer emotional distress because of injury to another has the potential to allow unlimited recovery).

*Plaintiff C.C.'s Claim for A.C.'s Medical Expenses*

In the complaint, plaintiff C.C. also seeks to recover for A.C.'s medical expenses. Roadrunner argues that A.C. is the proper plaintiff to recover for her medical expenses. Plaintiff C.C. has not pursued this claim in her opposition to summary judgment. Accordingly, C.C.'s claim on her own behalf for the medical expenses of A.C. is deemed abandoned.

## RECOMMENDATION

No genuine issue of material fact exists on plaintiffs' claims against defendant Roadrunner Trucking, Inc. Accordingly, Roadrunner's motion for summary judgment should be granted.

Copies of this Report and Recommendation are being mailed to the parties, who are hereby notified that they have the right to object to the Report and Recommendation. The parties are further notified that they must file any objections to the Report and Recommendation within ten (10) days after receiving it.

DATED this 30th day of March, 1993.