Jeffrey L. JACKSON, Plaintiff and Appellant,

v.

Grover P. RIGHTER; Clay Wilkes; Novell, Inc., a Delaware corporation, dba in Utah; Novell, Inc.; and Unix Systems Laboratories, Inc., a New Jersey corporation, dba Univel, a partnership, Defendants and Appellees.

No. 940045.

Supreme Court of Utah.

Feb. 27, 1995.

Jackson Howard, Leslie W. Slaugh, Provo, for Jackson.

David H. Schwobe, Salt Lake City, for Righter.

Michelle Mitchell, Salt Lake City, for Wilkes.

Stephen J. Hill, Richard A. Van Wagoner, Salt Lake City, for Novell and Univel.

STEWART, Associate Chief Justice:

Plaintiff Jeffrey L. Jackson appeals the district court's grant of summary judgment in favor of defendants Novell, Inc., and the joint venture between Novell, Inc., and Unix Systems Laboratories, Inc., dba Univel. We affirm.

Summary judgment is appropriate when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Utah R.Civ.P. 56(c). We review a grant of summary judgment for correctness, without deference to the trial court's legal conclusions, *K & T, Inc. v. Koroulis*, 888 P.2d 623, 625–27 (Utah 1994), and view the inferences therefrom in a light most favorable to finding a material issue of fact. *Beach v. University of Utah*, 726 P.2d 413, 414 (Utah 1986). Accordingly, we recite the facts in a light most favorable to plaintiff.

Plaintiff and Marie Jackson were married August 14, 1987. In November 1988, Mrs. Jackson began working at Novell in Provo, Utah, as a secretary in the Software Engineering Department. At that time, defendant Grover P. Righter was Novell's Director of Software Engineering. As director, Mr. Righter was responsible for supervising several large engineering teams; managing a substantial budget; hiring, evaluating, promoting, and firing employees; and organizing employee functions. Mr. Righter was Mrs. Jackson's immediate supervisor between November 1988 and August 1991 and, over the course of her employment, promoted her to the positions of administrative assistant and project coordinator, authorized

her to record unworked overtime hours as an unofficial raise, and gave her substantial bonuses. He also lavished gifts on her from his personal funds.

By November 1990, Mr. Righter had become attracted to Mrs. Jackson and thereafter began making overtures toward her which resulted in a romantic relationship between them. In early 1991, the two spent much time together in Mr. Righter's office during working hours discussing personal matters, hugging, and kissing. On the pretext of business, Mr. Righter took Mrs. Jackson to the Star Palace dance hall in Provo, the Excelsior Hotel in Provo, and the Little America Hotel in Salt Lake City, kissing, hugging, or fondling her on these occasions. Mr. Righter also took Mrs. Jackson on business trips during working hours to monitor Novell's office and team in Sandy, Utah, for which Mr. Righter was responsible, at times taking up to six hours to travel the one-half hour commute between Provo and Sandy. At some point, others at Novell became aware of Mr. Righter's and Mrs. Jackson's activities.

Mrs. Jackson terminated their romantic relationship in July 1991. That same month, Mrs. Jackson began a relationship with defendant Clay Wilkes, who was employed at that time as an engineering manager in Novell's Sandy office. Within weeks, Mr. Wilkes and Mrs. Jackson were involved in a sexual relationship.

In August 1991, Mr. Righter became Vice President of Univel and moved to the Sandy office. Mrs. Jackson transferred with him and remained under his direct-line supervision. In December 1991, Mr. Wilkes also became employed by Univel as a technical lead and worked in the same department with Mrs. Jackson at the Sandy office but never supervised her.

Plaintiff became aware of Mrs. Jackson's romantic involvement with both Mr. Wilkes and Mr. Righter in November 1991. The Jacksons attempted reconciliation and participated in marriage counseling. However, Mrs. Jackson resumed her sexual relation-

ship with Mr. Wilkes shortly thereafter, and the Jacksons subsequently divorced.

Plaintiff then filed this action alleging that defendants Mr. Righter and Mr. Wilkes had alienated Mrs. Jackson's affections toward him, intentionally inflicted emotional and physical injury on him, and intentionally interfered with his marital contract. Plaintiff also alleged that defendants Novell and Univel were vicariously liable for these tortious actions and that Novell and Univel were directly liable for negligently supervising and retaining Mr. Righter and Mr. Wilkes.

All defendants moved for summary judgment on all claims. The trial court denied the motions by Mr. Righter and Mr. Wilkes, but granted summary judgment in favor of Novell and Univel, dismissing all claims against them. The court certified the dismissal as final under Rule 54(b), and plaintiff appeals.

## I. ISSUES NOT BEFORE THIS COURT

■ Plaintiff erroneously contends that the trial court dismissed his claims against Mr. Righter and Mr. Wilkes for interference with his marital contract. Because no final order regarding these claims is before this Court, we do not address them.

■ In its order dismissing Novell and Univel, the trial court attempted to certify to this Court two questions of law: "whether a claim for alienation of affections is stated where the actions of two defendants collectively, but possibly not individually, are alleged to be the controlling cause of the alienation, and ... whether Utah recognizes a cause of action for interference with the marital contract." The Court of Appeals may certify a case to this Court for decision, Utah R.App.P. 43, but the procedure for the certification of an issue is not available to district courts. Accordingly, we do not address these questions.

## II. CLAIMS AGAINST NOVELL AND UNIVEL

Plaintiff argues that the trial court erred in granting summary judgment in favor of

Novell and Univel because genuine issues of material fact exist regarding (1) whether Mr. Righter's conduct was within the scope of his employment, performed in his managerial capacity, or performed under his apparent authority, and (2) whether Novell and Univel negligently supervised and retained Mr. Righter and Mr. Wilkes. For the reasons discussed below, we hold that no genuine issues existed with respect to plaintiff's claims against Novell and Univel and that summary judgment was proper.

## A. Vicarious Liability of Novell and Univel

■ Plaintiff claims that Mr. Righter's actions that allegedly alienated Mrs. Jackson's affections were within the scope of his employment and that summary judgment for Novell and Univel was improper because such a determination is a question of fact. We disagree. An employer may be vicariously liable under the doctrine of respondeat superior for the harmful actions of an employee if those actions are committed within the scope of the employee's employment. *J.H. by D.H. v. West Valley City*, 840 P.2d 115, 122 (Utah 1992); *Clover v. Snowbird Ski Resort*, 808 P.2d 1037, 1040 (Utah. 1991); *Birkner v. Salt Lake County*, 771 P.2d 1053, 1056 (Utah 1989). To be considered within the scope of employment, an employee's conduct must (1) "be of the general kind the employee is employed to perform"; (2) "occur within the hours of the employee's work and the ordinary spatial boundaries of the employment"; and (3) "be motivated, at least in part, by the purpose of serving the employer's interest." *Birkner*, 771 P.2d at 1056–57. Whether an employee's conduct falls within the scope of employment is ordinarily a question of fact. *Clover*, 808 P.2d at 1040. However, where the employee's conduct is so clearly outside the scope of employment that reasonable minds cannot differ, the issue may properly be decided as a matter of law. *Id.; Birkner*, 771 P.2d at 1057. For example, *J.H. by D.H.* held that a police officer's sexual molestations of a youth under his supervision was clearly outside the

scope of employment, as a matter · of law, because his acts were not of the kind and nature he was employed to perform. 840 P.2d at 123.

■ In this case, Mr. Righter's romantic involvement with Mrs. Jackson was so clearly outside the scope of his employment that reasonable minds could not differ. Applying the *Birkner* criteria, we note, as Novell and Univel concede, that most of Mr. Righter's alleged tortious conduct occurred within the hours and spatial boundaries of his employment. However, Mr. Righter's conduct was not of the general type he was employed to perform, and neither was it intended to serve, nor did it serve, Novell's or Univel's purpose. Mr. Righter was not hired to perform acts of a sexual nature on, or make romantic overtures toward, an employee under his supervision. *See J.H. by D.H.*, 840 P.2d at 123; *Birkner*, 771 P.2d at 1058. Plaintiff argues that many of Mr. Righter's alleged tortious acts were part of the conduct he was hired to perform in connection with his authority to promote, evaluate, train, and give raises to Mrs. Jackson. For example, plaintiff asserts that the first time Mr. Righter expressed his attraction for Mrs. Jackson was while he held her hand during a formal employee evaluation in his office. Plaintiff's argument is without merit. Mr. Righter was not authorized to use his supervisory position to engage in a romantic relationship with his subordinates. His romantic advances were not a part of his duties but amounted to an abandonment of the supervisory and managerial responsibilities he was hired to perform.

■ In addition, while Mr. Righter used his company duties as a springboard for pursuing his relationship with Mrs. Jackson, he was not motivated by the purpose of serving Novell's or Univel's interests. An employee's conduct is usually not in the scope of employment where the employee's motivation for the activity is personal, even though some transaction of business or performance of duty may also occur. *Hodges v. Gibson Prods. Co.*, 811 P.2d 151, 157 (Utah 1991);

*see also Clover,* 808 P.2d at 1041 (citing *Whitehead v. Variable Annuity Life Ins.,* 801 P.2d 934, 937 (Utah 1989)). Mr. Righter admits that his motives were entirely personal and were in no way directed at the accomplishment of Novell's or Univel's interests. Thus, although Mr. Righter used business activities as a forum for pursuing his romantic relationship with Mrs. Jackson, his acts were clearly an abandonment of employment and outside the scope of his employment.

Plaintiff urges that even if Mr. Righter's conduct was outside the scope of his employment and not authorized by Novell or Univel, his conduct was performed either in a managerial capacity or within the scope of his apparent authority. Plaintiff's managerial capacity claim revisits his scope of employment claim addressed above. In essence, plaintiff argues that because Mr. Righter was a high level manager, his scope of employment was very broad and embraced his allegedly tortious conduct. In assessing whether Mr. Righter's acts fell within his scope of employment, we took into account Mr. Righter's managerial position. We need not repeat our analysis.

■ Likewise, plaintiff's claim that Novell and Univel are liable under a theory of apparent authority is without merit. To be vicariously liable for the acts of an employee under a theory of apparent authority, an employer must conduct itself in such a way as to clothe its employee with apparent authority to perform the torts committed and there must be reasonable reliance on that apparent authority on the part of the injured party. *Luddington v. Bodenvest Ltd.,* 855 P.2d 204, 209 (Utah 1993); *State ex rel. Div. of Consumer Protection v. GAF Corp.,* 760 P.2d 310, 311 (Utah 1988).

■ Plaintiff asserts that Novell's and Univel's acts placing Mr. Righter in a supervisory position and failing to restrict his decision-making authority in that position clothed Mr. Righter with authority to make romantic advances toward Mrs. Jackson. However, the mere fact that Novell and Univel employed Mr. Righter in a managerial position did not clothe Mr. Righter with authority to become romantically involved with his subordinates. *See Zions First Nat'l Bank v. Clark Clinic Corp.,* 762 P.2d 1090, 1095 (Utah 1988). Nor does the fact that Novell and Univel allowed Mr. Righter to promote Mrs. Jackson to positions within the organizational structure imply such authority.

■ Further, plaintiff has not claimed that he was injured because he reasonably relied upon Mr. Righter's alleged apparent authority to alienate the affections of Mrs. Jackson. Without conduct on the part of Novell or Univel and reasonable reliance on his part, plaintiff cannot maintain a claim based upon apparent authority against Novell or Univel for Mr. Righter's conduct.

## B. Negligent Supervision

■ Plaintiff claims that Novell and Univel were negligent in supervising and retaining Mr. Righter and Mr. Wilkes and that their negligence caused the alienation of Mrs. Jackson's affections. To recover for negligence, a plaintiff must show that the defendant owed the plaintiff a duty, the defendant breached the duty, the breach was a proximate cause of the plaintiff's injuries, and there was in fact injury. *Hunsaker v. State,* 870 P.2d 893, 897 (Utah 1993); *Reeves v. Gentile,* 813 P.2d 111, 116 (Utah 1991); *Williams v. Melby,* 699 P.2d 723, 726 (Utah 1985). Plaintiff has failed to allege facts establishing a duty on the part of Novell or Univel to protect him from his claimed injury.

■ In the context of a claim for negligent supervision or retention, a duty may arise when an employer could reasonably be expected, consistent with the practical realities of an employer-employee relationship, to appreciate the threat to a plaintiff of its employee's actions and to act to minimize or protect against that threat. *Stone v. Hurst Lumber Co.,* 386 P.2d 910, 911 (Utah 1963); Restatement (Second) of Torts § 317 (1965); *see J.H. by D.H.,* 840 P.2d at 126. Plaintiff

asserts that Mr. Righter's and Mr. Wilkes' acts which allegedly alienated Mrs. Jackson's affections were foreseeable because Novell and Univel knew that spousal affections could be alienated by romantic relations among employees and knew or should have known of Mr. Righter's and Mr. Wilkes' relationships with Mrs. Jackson. We disagree. The inquiry is not whether Novell or Univel could foresee that any marital relation may be damaged by any romantic relationship between two employees. A general knowledge that marital relations could foreseeably be damaged is not sufficient to impute to an employer a duty to protect its employees' spouses from a work-place romance. *See J.H. by D.H.*, 840 P.2d at 126 (employer had no duty to take special supervisory precautions when employer had no knowledge of deviant behavior among *its* employees); *cf. Clover*, 808 P.2d at 1048 (plaintiff alleged that employer knew its employees used dangerous ski jump). Rather, the inquiry is whether Novell or Univel could reasonably be expected to foresee the threat of alienation of Mrs. Jackson's affections by Mr. Righter's or Mr. Wilkes' acts.

■ Nothing plaintiff alleges shows that Novell or Univel could reasonably be expected to foresee this threat. Plaintiff claims that Novell knew Mr. Righter promoted Mrs. Jackson, authorized her to record unworked overtime hours, and required her, as his administrative assistant, to spend a great deal of time in his office and accompany him on business trips. However, nothing in these acts would give Novell reason to foresee that the acts would alienate Mrs. Jackson's affections toward plaintiff.

■ Nor, as plaintiff claims, would a knowledge of Mrs. Jackson's romantic relationships with Mr. Righter or Mr. Wilkes give Novell or Univel reason to know that they should act to minimize or prevent plaintiff's injury. Unlike the foreseeability of a physical injury caused by an employee who has demonstrated violent or deviant propensities, a romantic relationship between employees may or may not give rise to a cause of action by an employee's spouse. Recovery for the alienation of affections depends upon the determination of the controlling cause of the injury and necessarily involves an analysis of the quality of the marriage relationship. *See Norton v. McFarlane*, 818 P.2d 8, 15 (Utah 1991); *Nelson v. Jacobsen*, 669 P.2d 1207, 1218 (Utah 1983). The tort will not lie when the personalities or inadequacies of the spouses, not the acts of third persons, caused the breakdown of the bonds that are essential to the consortium interests protected by law. *See Norton*, 818 P.2d at 14. Romantic relationships between employees may only be incidental to, or result from, the primary causes of marital discord and loss of affections. *Id.* Thus, an employer's awareness of a romantic relationship between two of its employees does not give the employer sufficient knowledge to anticipate a claim for alienation of affections against an employee under its supervision.

■ Policy considerations also preclude our imposition of a duty upon employers to police the private conduct of their employees for the protection of employees' spouses. The cause of action for alienation of affections provides a remedy when a third person is at fault for the destruction of a marital relation. In *Nelson* and *Norton*, we recognized the tort's potential for abuse and reiterated that the scope of this tort is limited to only those who are proved to be the controlling cause of alienation. *Nelson*, 669 P.2d at 1218–19; *Norton*, 818 P.2d at 14–15. We decline to extend its reach to impose a duty upon employers to control their employees' private relationships.

In addition, employers have no duty to determine the marital status of their employees. It would be unreasonable to impose upon employers a duty to monitor romantic relationships among their employees to protect marital relations of which they may not even be aware. Indeed, absent some indication of harassment or intimidation, an employer who attempted, merely upon the basis of its knowledge of a romantic relationship, to police the personal conduct of its employ-

ees may expose itself to liability for interfering with private relationships.

 Plaintiff has also failed to allege facts establishing that any act or omission on the part of Novell or Univel was the proximate cause of his injury. Nothing indicates that more rules or different supervision would have prevented Mr. Righter's or Mr. Wilkes' acts. First, Mr. Righter acknowledged that romantic relationships between supervisors and subordinates were improper and violated the employment rules of Novell and Univel. It is unreasonable to assume that different rules would have affected Mr. Righter's conduct. In addition, despite Novell's advice to Mrs. Jackson that she should distance herself from Mr. Righter and pursue a different career path at Novell, she chose to transfer to Univel, remain under Mr. Righter's supervision, and work in the same department with Mr. Wilkes. Finally, Mr. Wilkes and Mrs. Jackson continued their sexual relationship after taking a leave of absence and finally terminating their employment with Univel. Nothing plaintiff alleges indicates that different actions by Univel would have prevented that relationship.

For the foregoing reasons, we hold that no genuine issue of material fact exists and that Novell and Univel were entitled to judgment as a matter of law.

Affirmed.

ZIMMERMAN, C.J., and HOWE, DURHAM and RUSSON, JJ., concur.