**Marianne RAY, Plaintiff,**

v.

**VALUE BEHAVIORAL HEALTH, INC., a foreign corporation; Thomas Massoll, and Does 1 through 10, Defendants.**

No. CV–S–97–0260–PMP (LRL).

United States District Court,
D. Nevada.

June 5, 1997.

Bryant L. Welch, Potomac, MD, Gregory F. Wilson, Reno, NV, for Plaintiff.

J. Stephen Peek, Elissa F. Cadish, Hale, Lane, Peek, Dennison, Howard, Anderson & Pearl, Las Vegas, NV, for Value Behavioral.

James F. Chrisman, Robert D. Tarte, Barker, Brown, Busby & Sutherland, Las Vegas, NV, for Massoll.

## ORDER

PRO, District Judge.

Presently before the Court is Defendant Value Behavioral Health, Inc.'s ("VBH") Motion to Dismiss (# 5A), filed on March 11, 1997. Defendant Thomas Massoll ("Massoll") filed a Partial Joinder With and Partial Opposition to the Motion to Dismiss (# 14) on April 9, 1997. Plaintiff Marianne Ray ("Ray") filed separate Oppositions to VBH's Motion (# 15) and to Massoll's Motion (# 18) on April 11 and April 18, 1997, respectively. VBH filed a Reply (# 26) to Ray's Opposition on May 2, 1997. Massoll failed to file a Reply brief.

### I. Factual Background

Marianne Ray filed a complaint in the District Court in and for Clark County, Nevada, on October 18, 1996, for various tort claims against VBH and Massoll. The state court action was removed to this Court on February 26, 1997. In her complaint, Ray alleges that during the summer of 1994, she

suffered from various psychological problems relating to her sister's attempted suicide. Upon deciding to seek treatment for these problems, she contacted VBH, as required under the terms of her insurance policy.[1] VBH referred her to Defendant Massoll, who undertook the mental treatment and care of Ray. Massoll's treatment included administering psychological tests, eliciting personal and confidential information from Ray and rendering his professional advice as to her condition.

Ray contends that for the last two years, Massoll has utilized his psychological and counseling expertise not to solve her psychological problems, but rather to increase and intensify them. Ray alleges that Massoll violated his professional and fiduciary duty to Ray by harassing her, disrupting her marriage, terrifying her and subjecting her to exacerbated psychological and emotional trauma.

Ray supports these contentions with specific factual allegations in her complaint. She alleges that Massoll falsely presented himself as an expert on suicide, and told Ray that he could teach her how to prevent suicide and alleviate her long-standing fear that loved ones would kill themselves. To effectuate this, Massoll arranged for Ray to attend a suicide prevention program presented to professionals and invited Ray to stay at his home while she attended the program. When she agreed, Massoll came into her bedroom seeking sexual relations, which Ray vehemently refused. Ray contends that in October of 1994, Massoll began to deliver continuous correspondence to her containing "bizarre romantic harangues" and sexually explicit statements. Massoll also told Ray that he wished her husband were dead.

On November 4, 1994, Massoll appeared at Ray's home unannounced and uninvited, saying that he wanted to be closer to her family. Also beginning in November of 1994, Massoll telephoned Ray incessantly, frequently in tears, despite Ray's repeated requests that he stop. Ray contends that this harassment continued despite her explicit instructions to Massoll to stop calling her. When Ray re-

quested that she be referred to another therapist, Massoll refused to do so. Instead, Ray alleges that Massoll intensified his behavior, and began to tell Ray that she was in denial of her true feelings for him. He then informed her that her psychological test results made it clear that she was not compatible with her husband. Conveniently, these tests also revealed that she would be better off with Massoll, or alternatively, that she would be better off if her husband were dead.

Ray, based on information and belief, alleges that VBH fired Massoll in May of 1995. She contends that after VBH terminated Massoll, he continued to harass her, including applying for a job where her husband worked, which was several hundred miles from Massoll's residence. In response to these events, Ray filed her state court complaint against Massoll and VBH for Negligence by a Professional Counselor, Breach of Fiduciary Duty, Intentional Infliction of Emotional Distress, Negligent Infliction of Emotional Distress and Invasion of Privacy.

## II. Motion to Dismiss

In considering the Motion to Dismiss, the factual allegations of Ray's Complaint must be presumed to be true, and this Court must draw all reasonable inferences in her favor. *Usher v. City of Los Angeles,* 828 F.2d 556, 561 (9th Cir.1987). The issue is not whether Ray will ultimately prevail, but whether she is entitled to offer evidence in support of her claims. *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974). Consequently, the Court may not grant a Motion to Dismiss for failure to state a claim "unless it appears beyond doubt that the Plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957). The Court does not, however, necessarily assume the truth of legal conclusions merely because they are cast in the form of factual allegations in a Plaintiff's Complaint. *Western Mining Council v. Watt,* 643 F.2d 618, 624 (9th Cir.), *cert. denied,* 454 U.S. 1031, 102 S.Ct. 567, 70 L.Ed.2d 474 (1981).

---

1. Ray's husband was employed by Southwest Airlines, and she was covered as his spouse un-

der an insurance plan provided by Southwest Airlines.

## A. Respondeat Superior

■ Initially, this Court notes that whether an employee is acting within the scope of his or her employment is generally a question of fact for the jury. *Rockwell v. Sun Harbor Budget Suites*, 112 Nev. 1217, 925 P.2d 1175, 1180 (1996). However, if undisputed evidence exists regarding the employee's status at the time of the conduct at issue, it may be properly resolved as a matter of law by the Court. *Id.*

### 1. Nevada's Standard for Respondeat Superior Liability

VBH initially argues that it is not liable under a theory of respondeat superior because the alleged actions of Massoll were outside the scope of his employment as a professional counselor for VBH.[2] The Nevada Supreme Court addressed respondeat superior liability in the context of a counselor who sexually abused a patient in *Nevada Dept. of Human Resources, Div. of Mental Hygiene and Mental Retardation v. Jimenez,* —— Nev. ——, 935 P.2d 274 (1997).[3] In *Jimenez,* a minor child was sexually abused by the administrator ("Peters") of a residential state mental health facility. *Id.* at 276–77. The child's mother and guardian filed suit against the Nevada Department of Human Resources, Division of Mental Hygiene and Mental Retardation ("the State") for negligent supervision, false imprisonment, battery and sexual assault. *Id.* at 275. The State argued that Peters' actions were not within the course and scope of his employment, and therefore the State was not liable for his actions. *Id.* at 279.

■ In order for an employer to be liable for the intentional tort of an employee under Nevada law, the tort must occur within the scope of the task assigned to the employee. *Jimenez,* 935 P.2d at 279. In *Jimenez,* the Nevada Supreme Court rejected the "motivation test" for employer liability utilized by other jurisdictions. *Id.* This test abolishes respondeat superior liability if the "employee's actions were not primarily motivated by the desire to serve his or her employer." *Id.* Instead, the Nevada Supreme Court adopted a new test extending an employer's liability "beyond his actual or possible control over the employees to include risks inherent in or created by the enterprise because [the employer], rather than the innocent injured party, is best able to spread the risk through prices, rates or liability insurance." *Id.* (quoting *Rodgers v. Kemper Const. Co.,* 50 Cal.App.3d 608, 124 Cal.Rptr. 143 (1975)). A court must determine whether the action taken by the employee was a generally foreseeable consequence of his or her employment. The employee's conduct is foreseeable if it "is not so unusual or startling that it would seem unfair to include the loss resulting from it among the other costs of the employer's business." *Id.,* 935 P.2d at 280 (quoting *Rodgers,* 50 Cal.App.3d at 618–19, 124 Cal.Rptr. 143).

■ An exception to this new test for liability exists if an employee substantially departs from his or her duties for purely personal reasons. *Jimenez,* 935 P.2d at 281. The proper focus is not whether the "wrongful act itself was authorized but whether it was committed in the course of a series of acts of the agent which were authorized by the principal." *Id.* (quoting *Perez v. Van Groningen & Sons. Inc.,* 41 Cal.3d 962, 970, 227 Cal.Rptr. 106, 719 P.2d 676 (1986)). This exception did not apply in *Jimenez* since Peters' conduct was within a series of acts authorized by the State, such as counseling children and conducting bed checks. *Id.* Peters misused his authority by sexually assaulting a child under his care, but this alone was insufficient to create an exception to the general rule of liability. *Id.*

■ In order to determine if it is appropriate to hold an employer responsible for the acts of an employee, a court must analyze the policy objectives underpinning respondeat superior liability. These objectives are to

---

**2.** In his Partial Joinder and Partial Opposition to the Motion to Dismiss (# 14), Massoll argues that the alleged actions are within the scope of his employment, but that ERISA preempts Ray's claims.

**3.** No party cites the *Jimenez* case, which was issued on March 27, 1997, after VBH filed its Motion to Dismiss, but before Massoll and Ray filed their responses to VBH's Motion.

prevent tortious conduct, fully compensate the victim and to ensure that the victim's losses are equitably borne by those who profit from the enterprise that generated the injury. *Jimenez*, 935 P.2d at 280. No single objective is absolutely controlling, they each must be weighed in light of the facts and circumstances of each particular case. *Id.* at 280.

The *Jimenez* court found respondeat superior liability appropriate given the facts involved in Peters' sexual abuse of a child under his care for mental health problems. Peters had extensive control over the children he supervised, since "as a counselor, the children looked to him for guidance." *Id.* at 281. As the products of troubled backgrounds, the children supervised by Peters were particularly vulnerable. Furthermore, given the context of treatment for psychological problems, the sexual abuse that occurred was neither startling nor unexpected. Respondeat superior liability was appropriate since it was foreseeable that Peters or someone in his position would misuse their authority by engaging in such behavior. *Id.*

## 2. The Scope of Massoll's Employment with VBH

■ Applying the rule for liability articulated in the *Jimenez* case, this Court finds that a Motion to Dismiss premised on a lack of respondeat superior liability is inappropriate. In analyzing VBH's Motion, this Court must consider the few facts presented in a light most favorable to Ray. Ray contends that Massoll misinterpreted psychological tests, counseled her inadequately and played various mind games with her. The misuse of private information Ray alleges is closely connected to Massoll's work as a counselor, and is similar to activities taken by other counselors. The very purpose of Massoll's employment was to obtain Ray's trust, to render advice to her and to influence her behavior in a manner that would remedy her psychological problems. These activities are well within the scope of the task assigned to Massoll by VBH.

The next step in the analysis under *Jimenez* is to determine if the conduct at issue is a risk inherent in the enterprise of VBH. This requires a determination of whether it was foreseeable to VBH such that it is not unfair to include the ramifications from Massoll's actions in the costs of VBH's doing business. This Court concludes that Massoll's abuse of his power and control over Ray was foreseeable, as was the sexual abuse in the *Jimenez* case. Massoll served as a counselor to Ray, a position of trust and confidence. Through the course of his employment, he had special access to personal information about Ray, and was in a position of authority over her. Ray was clearly psychologically vulnerable, and it is not unusual nor startling that someone in Massoll's position would exploit this vulnerability.

It is also equitable to hold VBH responsible for Massoll's actions. VBH makes a profit supplying counselors and other treatment for those in need, and with that profit comes a responsibility to ensure that services are adequately provided and that the patients' best interests are advanced. VBH is in a position to efficiently absorb the costs of an employee's harmful actions, and by holding VBH liable, it will provide greater assurance that victims such as Ray will be fully compensated for their losses. Furthermore, holding employers such as VBH liable will create an incentive for employers to closely monitor those employees who occupy sensitive positions. This will promote caution in hiring such employees, which will aid in preventing similar harm to future patients.

■ Finally, the exception to respondeat superior liability articulated by the *Jimenez* court does not apply in the present case. Massoll did not act for purely personal reasons. Under the test set forth by the Nevada Supreme Court, an action is not for purely personal reasons if it is committed in the course of a series of acts of the agent which are authorized by the principal. *Jimenez*, 935 P.2d at 281. Ray has alleged that Massoll harmed her by exploiting personal information he obtained in order to treat her, and that through the course of their patient/therapist relationship he sexually harassed her. VBH authorized Massoll's receipt of personal information about Ray and his treatment of her psychological problems. Therefore, VBH has not made the showing necessary to

justify an application of the exception to respondeat superior liability.

VBH cites several cases from other jurisdictions in support of its Motion.[4] In these cases, a personal counselor or therapist engaged in improper sexual conduct with a patient, and the conduct was held to be outside the scope of employment. Accordingly, the employers were not liable under a theory of respondeat superior. *See, e.g., Cosgrove v. Lawrence,* 215 N.J.Super. 561, 522 A.2d 483, 484–85 (App.Div.1987); *Birkner v. Salt Lake County,* 771 P.2d 1053, 1058 (Utah 1989).

The Nevada Supreme Court, in the *Jimenez* case, specifically rejected the restrictive tests for respondeat superior liability utilized by some jurisdictions. 935 P.2d at 279. Furthermore, the *Cosgrove* and *Birkner* cases cited by VBH are distinguishable as neither case dealt with a Motion to Dismiss. *Cosgrove* upheld a lower court's grant of Summary Judgment, and in *Birkner* the court overturned the trial court's denial of a Motion for Judgment Notwithstanding the Verdict. In both of these cases the factual discovery conducted by the parties gave the courts the ability to decipher the scope of employment. In the present case, no discovery has been conducted. Thus, this Court has nothing but conjecture upon which to base a definition of the scope of Massoll's employment. At the very least, VBH's Motion is inappropriate until a factual basis is developed upon which this Court can rest its analysis of respondeat superior liability.

### B. ERISA Preemption

VBH alleges that even if it would be liable under a theory of respondeat superior, Ray's action is preempted by provisions of the Employee Retirement Income Security Act of 1974 ("ERISA"). ERISA governs employee benefit plans such as medical, surgical, or hospital care or benefits provided through the purchase of insurance or otherwise. *See*

29 U.S.C. § 1002. ERISA contains a preemption provision superseding "any and all State laws insofar as they . . . relate to any employee benefit plan" covered by the statute. 29 U.S.C. § 1144(a). VBH argues that Ray's claims "relate to" the plan provided to her husband by Southwest Airlines, and therefore ERISA preempts her claims.

The Supreme Court examined what it means for state laws to "relate to" an employee benefit plan in *New York State Conference of Blue Cross & Blue Shield Plans, et. al., v. Travelers Ins. Co. et. al.,* 514 U.S. 645, 115 S.Ct. 1671, 131 L.Ed.2d 695 (1995). The Court specifically stated that not all state laws are preempted, and that the phrase "relate to" is a phrase of limitation. *Id.* at 655–57, 115 S.Ct. at 1677. The Court examined its prior holding in *Shaw v. Delta Air Lines, Inc.,* 463 U.S. 85, 103 S.Ct. 2890, 77 L.Ed.2d 490 (1983), which defined "relates to" as a "connection with or reference to such a plan." *Shaw,* 463 U.S. at 96–97, 103 S.Ct. at 2900. In *Travelers,* pursuant to state law, surcharges were collected from patients covered by commercial insurers but not from patients insured by a Blue Cross/Blue Shield plan. 514 U.S. at 646–49, 115 S.Ct. at 1673. The Court found the plan at issue in *Travelers* did not refer to an ERISA plan, since the charges were imposed regardless of whether the coverage at issue was secured by an ERISA plan. *Id.* at 655–57, 115 S.Ct. at 1677.

Since the state law did not refer to the plan, the Court went on to analyze whether or not the law had a connection with an ERISA plan. To determine this, the Court looked to the objectives of the ERISA statute. *Travelers,* 514 U.S. at 655–57, 115 S.Ct. at 1677. The main purpose of the preemption clause was to avoid a multiplicity of regulation in order to allow nationally uniform administration of employee benefit plans.[5] *Id.* at 655–59, 115 S.Ct. at 1677–78.

---

4. VBH contends that Texas law applies under the factors set forth for applying the law of another jurisdiction in *Motenko v. MGM Dist., Inc.,* 112 Nev. 1038, 921 P.2d 933 (1996). However, at this stage of the proceedings there has been no factual development of where the harm to Ray occurred, or where the relationship between Ray, VBH and Massoll was centered. Therefore,

VBH has not made a showing sufficient to warrant the application of Texas law.

5. The Court analyzed *Shaw* and *FMC Corp. v. Holliday,* 498 U.S. 52, 60, 111 S.Ct. 403, 408–09, 112 L.Ed.2d 356 (1990), and found that in each of those cases the laws preempted by ERISA

Despite Congress' deliberately expansive view of ERISA preemption, ERISA was not meant to bar state laws having an indirect economic influence on insurance plans. *Id.* at 659–61, 115 S.Ct. at 1679. The *Travelers* Court based this finding on the premise that laws such as quality control and workplace regulations were not likely to affect premium differentials among competing insurers, even though such state regulation will indirectly affect the costs of an ERISA plan. Cost uniformity was not the object of preemption, and laws imposing indirect economic effects on health insurance plans are a far cry from the conflicting state laws from which Congress meant to insulate ERISA plans. *Id.* at 659–61, 115 S.Ct. at 1679.

In determining which state laws Congress intended to be preempted by ERISA, the Court noted that "the bigger the package of regulation with indirect effects that would fall on the respondent's reading of § 514, the less likely it is that federal regulation of benefits plans was intended to eliminate state regulation of health care costs." *Travelers*, 514 U.S. at 661, 115 S.Ct. at 1679. Additionally, preemption does not exist if the state law has only a "tenuous, remote, or peripheral" connection with an ERISA plan, as is the case with many laws of general applicability. *Id.* (citing *District of Columbia v. Greater Washington Bd. of Trade*, 506 U.S. 125, n. 1, 113 S.Ct. 580, 121 L.Ed.2d 513. (1992) (internal quotation marks and citations omitted)). The Court found nothing in the language of the Act or in its legislative history indicating that Congress intended to eviscerate general health care regulation, which historically is a matter of local concern. *Id.* at 661–63, 115 S.Ct. at 1680.

In the present case, Ray's claims do not relate to an ERISA plan. The harm to Ray would have occurred regardless of whether or not Massoll's services were secured through an insurance plan covered by ERISA. There is no reference to the ERISA plan, and there is no dispute as to coverage or to what benefits Ray was entitled.[6] As such, like the plans at issue in *Travelers*, Ray's tort claims against VBH and Massoll "cannot be said to make 'reference to' ERISA plans in any manner." *Travelers*, 514 U.S. at 656, 115 S.Ct. at 1677.

The second step in the "relates to" analysis is to determine whether there is a connection with an ERISA plan. In doing so, this Court must look to the legislative intent behind ERISA, as did the *Travelers* Court. This Court finds that Ray's claims for negligence, invasion of privacy and infliction of emotional distress are exactly the sort of generally applicable personal injury laws that § 514 of ERISA does not preempt. State tort laws of general applicability are matters of local concern which impose only indirect economic effects and costs on health plans. To hold that such claims are preempted by ERISA would federalize all tort claims on behalf of plaintiffs who obtain medical treatment through ERISA insurance plans. This Court will not impose such a sweeping federalization of basic personal injury claims in the absence of any language in the text of ERISA or in the absence of any evidence of Congressional intent.

The Ninth Circuit has not directly addressed whether a medical malpractice claim is preempted by ERISA.[7] However, the Ninth Circuit has held that common law negligence claims may be preempted by ERISA

---

mandated employee benefit structures or their administration. *Id.* at 657–59, 115 S.Ct. at 1678.

**6.** In support of its argument, VBH cites *Jass v. Prudential Health Care Plan. Inc.*, 88 F.3d 1482 (7th Cir.1996). In *Jass*, the Plaintiff sued for malpractice connected to surgery performed on her knee. The gravamen of the complaint was that she had been prematurely discharged and denied physical therapy based on her insurance company's determination that such treatment was unnecessary. *Id.* at 1485. The court recharacterized the Plaintiff's vicarious liability claim as a denial of benefits claim, and found that it was preempted by ERISA. *Id.* The alleged

negligence related to a benefit plan because the failure to treat the plaintiff stemmed directly from the administrator's conclusion that treatment was unwarranted. *Id.* at 1493. ERISA preempted the claim due to this "intertwining" of the benefit plan and the alleged negligence. *Id.*

**7.** The Central District of California, in *Bourns, Inc. v. KPMG Peat Marwick*, 876 F.Supp. 1116 (C.D.Cal.1994), found that ERISA did not preempt a state law claim for malpractice based on auditing work performed for an ERISA plan.

if the duty cannot be separated from the duties created by the plan itself. *Greany v. Western Farm Bureau Life Ins. Co.*, 973 F.2d 812, 817–19 (9th Cir.1992). Looking at the facts in a light most favorable to Ray, it cannot be said that her claims refer to an ERISA plan in such a manner. Ray's claims of negligence and invasion of privacy will likely be proven without any reference to an ERISA plan. If, however, as the facts evolve it becomes clear that her claims are intertwined with an ERISA plan, or that the parties must refer to the plan, its language or coverage to prove or disprove Ray's claims, VBH and Massoll may renew their argument that ERISA preempts her claims. However, given the law and the legal standard for a 12(b)(6) Motion, VBH and Massoll have not shown the requisite relation between Ray's claims and an ERISA plan.

IT IS THEREFORE ORDERED THAT Defendant's Motion to Dismiss (# 5A) is DENIED.